# Catanzaro *v.* Pennsylvania Railroad Company, Appellant.

*Common carriers—Railroads—Contract for freight—Evidence —Subsequent dealing with another railroad—Question for jury.*

1. In an action against a railroad company, a terminal carrier, for damages for breach of a contract of shipment, the case is for the jury and a verdict for the plaintiff will be sustained where it appears that the plaintiff, who spoke but little English, was at his own request taken to the office of the defendant's freight solicitor at Boston, who was told by a broker, who was plaintiff's agent, that the plaintiff wanted a shipment of his goods from Boston to Pittsburgh over the lines of the solicitor's company; that the solicitor took upon himself the task of making all provisions for the shipment and told the plaintiff that he would see that the kind of cars he wanted were furnished, the place and time when they would be assembled and that he would "take care;" that cars were subsequently furnished and loaded under the solicitor's personal supervision; and that the solicitor had authority to make such a contract.

2. In such a case binding instructions for defendant are not justified by the fact that subsequently, after the plaintiff had left for Pittsburgh leaving his agent in charge, the latter gave to the initial carrier orders filled out on the blanks of that company for the shipment of the goods routed over the defendant's line to Pittsburgh and a day or two thereafter accepted receipts or bills of lading from the initial company; and this is especially the case where the plaintiff's agent testifies that the giving of the orders was a mere matter of form and that they were given, as he supposed, pursuant to a contract already made with the defendant company.

Argued Oct. 24, 1911. Appeal, No. 171, Oct. T., 1911, by defendant from judgment of C. P. No. 4, Allegheny Co., Second T., 1908, No. 97, on veridict for plaintiff in case of Salvatore Catanzaro, doing business as S. Catanzaro & Company v. Pennsylvania Railroad Company. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Assumpsit for the value of a consignment of fruit damaged in transit. Before Carnahan, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $8,270.92, and judgment thereon. Defendant appealed.

*Error assigned* was in refusing motion for judgment non obstante veredicto.

*Thomas Patterson,* of *Patterson Sterrett & Acheson,* with him *James R. Miller,* for appellant.

*J. Roy Dickie,* with him *Wm. W. Wishart,* for appellee.

Opinion by Mr. Justice Stewart, January 2, 1912:

When this case was before us in 230 Pa. 305, we held —though not the point on which our decision of the case rested—that notwithstanding there appeared in evidence orders for shipment from the plaintiff addressed to the Boston & Maine R. R. Co., and receipts given for the goods by the latter company, on the evidence presented it remained a question for the jury to decide whether the contract for shipment had been made with the defendant company. On a second trial the case was submitted to the jury in accordance with the views expressed by us, and resulted in a verdict for the plaintiff. It is now contended on part of the defendant that, in view of the evidence on second trial, binding instructions should have been given in favor of

the defendant. The facts are so fairly and accurately stated in appellant's history of the case that we can do no better than repeat them as they are there stated. In December, 1906, the plaintiff went from Pittsburgh to Boston, Mass., where he purchased a large consignment of fine grapes and lemons. After the purchase, at his request, he was taken by the broker through whom he had bought the fruit, to the office of W. C. Brown, District Freight Solicitor of the Pennsylvania Railroad. The negotiations from this on were conducted entirely for the plaintiff, who spoke but little English, by DiCola, the fruit broker, who was admittedly plaintiff's agent in the premises. The plaintiff claimed that he told Mr. Brown that he wanted to ship four cars of grapes and two cars of lemons to Pittsburgh by Pennsylvania Railroad; that the grapes had come in on the steamer Republic and were at the White Star Dock in Charlestown; that they wanted dry, warm refrigerator cars, and that Mr. Brown replied that he would take care and about eleven o'clock A. M. would furnish some cars at the dock, that is, on December 4, the day of the conversation, and would ship one or two cars, and the next day, the 5th, they would ship the other cars. During the conversation Mr. Brown called up some one by telephone but DiCola did not hear or attend to the conversation. On that day the plaintiff and his agent, DiCola, went to the Charlestown dock about two o'clock in the afternoon and there found a car in process of loading. Mr. Brown came on the dock while the car was being loaded and told them that if the car had finished loading not later than three o'clock it would be shipped on the fast freight. On the afternoon of that day, December 4th, at three o'clock, Catanzaro, the plaintiff, left Boston leaving his agent DiCola in charge of the shipment of the fruit. On the same day DiCola, on behalf of Catanzaro, made out in his own office and on forms kept by him, the regular and formal orders for the shipment of the goods over

the Boston & Maine Railroad, routed to Pittsburgh over the Pennsylvania Railroad, signed them and delivered them to the Boston & Maine Railroad and received in return formal shipping receipts from the Boston & Maine Railroad, identical with the shipping orders, except that in the shipping orders, the date, number of car and number of barrels were left blank. What follows in appellant's history of the case is more or less argumentative and we omit it. What we have given is sufficient for present purposes. The cross examination of DiCola, who testified to the facts above recited, developed certain features not wholly consistent with the claim that a contract had been made with defendant company for a through shipment of the fruit from Boston to Pittsburgh, yet it left unqualified quite enough to warrant an inference that such contract had been entered into by the defendant's freight solicitor. The cars furnished proved defective, and as a result plaintiff's fruit was damaged to an extent that made it valueless. We do not understand that the authority of the defendant's freight solicitor to make such contract as plaintiff alleges was made, that is, for a through shipment from Boston to Pittsburgh, was denied. The question in the case therefore was, did he make such contract? If DiCola's testimony as to what occurred in the solicitor's office be accepted, it might well be argued that a final understanding was then and there reached and that a through shipment was contracted for. The solicitor was told that what plaintiff wanted was a shipment of his goods from Boston to Pittsburgh over the lines of the company the solicitor represented. Not a word was said by the solicitor which would give the plaintiff to understand that any other than himself was to be consulted in the transaction. The conversation was in an office maintained by the defendant company and in charge of this solicitor. The solicitor took upon himself the task of making all provisions for the shipment; he told the plaintiff that

he would see that the kind of cars he wanted were furnished, the place where and the time when they would be assembled, and that he would take care, whatever that meant. With nothing else appearing in the evidence no other conclusion could be reached than the contract was with the defendant company. Except as DiCola knew or had reason to believe that there were regulations of the Boston & Maine Company which would prevent the defendant's solicitor from effecting a through shipment on the account of the defendant company, a jury might well derive from what was there said and done a contract for through shipment. Certainly an uninformed shipper would under such circumstances naturally rest in such belief. Subsequently, on the same day that the conversation occurred, the plaintiff, through his agent DiCola, gave to the Boston & Maine Railroad Company orders filled out on the blanks of that company for the shipment of the goods, and a day or two thereafter accepted receipts or bills of lading from that company. It may well be argued, as doubtless it was upon the trial, that these orders and receipts make against plaintiff's claim that a through contract had been made with the defendant's agent, or that the transaction was so understood. It might be further argued, as again it doubtless was, that even if such contract had been made the orders and receipts from the Boston & Maine Company showed an abandonment of such contract and the creation of a new one with the Boston & Maine for the shipment. But it can hardly be contended that such inference resulted from the orders and receipts as would have justified the trial judge in holding as matter of law that they negatived conclusively the making of the contract alleged, especially in view of DiCola's testimony that the giving the orders was mere matter of form, and that they were given as he supposed pursuant to a contract already made with the defendant company. The case on its facts was for the jury. The

only error assigned was the refusal of the court to enter judgment for the defendant non obstante. As we view the case it would have been error to have done so.

The assignment is overruled and the judgment is affirmed.